# EXHIBIT "G"

MORRISON TENENBAUM PLLC
Lawrence F. Morrison, Esq.
87 Walker Street, Floor 2
New York, NY 10013
(212) 620-0938

*Counsel to Petitioning Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

    **Olympic Property Partners, LLC**

                    Debtor

Chapter 11

Case No. #: 15-23658-rdd

-------------------------------------------------------X

## DECLARATION OF STANLEY WOLFSON

1. I am the managing member of Concrete Capital, LLC ("Concrete") and make this declaration in support of the motion to appoint a chapter 11 trustee.

2. Concrete's claim in the bankruptcy case is derived from a Loan Modification and Extension Agreement (the "Agreement") dated October 14, 2015, wherein the alleged debtor and its managing members agreed to pay the sum of $3,153,878.00 and other related costs. At the time of the Agreement the alleged debtor misled Concrete about the financial condition of the debtor.

3. The Managing Member of the debtor is Seth Weinstein ("Weinstein"), who represented to Concrete that the debtor was in the process of closing on a major real estate contract in downtown Dallas known as 1401 Elm Street (the "Elm Street Property").

4. Concrete only found out by chance through the Dallas Morning News in the annexed article that the project was threatened with foreclosure. Seth Weinstein spoke about the closing of the Elm St. Property.

**The Court Should Direct the Appointment of a Trustee Governing Law**

5. I am a former attorney many years removed from practice; however, I understand the requirements to appoint a trustee are as follows.

6. The appointment of an independent fiduciary is warranted in this case under subsection (a) of section 1104 of the Bankruptcy Code. Specifically, Section 1104(a) provides:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> * * *
>
> (2) If such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor [ ].

11 U.S.C. § 1104(a)(2).

### a. The Appointment of a Chapter 11 Trustee is in the Best Interest of Creditors and the Estate

Under section 1104(a)(2), the Court may appoint a trustee, in its discretion, to address the "interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). See, e.g., In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989); Comm. of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 242 (4th Cir. 1987); In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). The facts about the requirements for an independent fiduciary are as follows:

7. Concrete relied on the following representations from Seth Weinstein in his capacity as managing member of the debtor. Seth Weinstein represented to Concrete that he had bonds, valued at $3,432,420, as listed in Seth Weinstein's financial statement, which would be the primary source of repayment of the Agreement. This was stated by Seth Weinstein various times prior to and at the closings of each loan disbursement.

8. Seth Weinstein confirmed to Concrete that in the event proceeds from the sale of the Elm St. Property were not available, he would cash the bonds to repay the loan in full. However, a few days prior to maturity, Seth Weinstein stated that he would not cash the bonds because of the penalty he would incur if cashed through December 31, 2015. Seth Weinstein was aware of the penalty about the bond collateral to the Lender as a repayment source.

9. The debtor and its managing member showed concrete assets on their financial statements include real estate listed as "Homes in NY and CT", at $5,850,000. During the underwriting process and thereafter, Seth Weinstein spoke directly to me and our underwriter Debbie Rodriguez about the strong market value of the coop he owned at 25 Central Park West, #2N, New York, New York (the "CPW Coop"). He also spoke about his home in Connecticut as another strong asset. On the financial statements he did not detail the real estate address of the assets and Seth Weinstein led me to believe he owned the CPW Coop. We found out after the loan maturity that Seth sold the CPW Coop on August 18, 2011 and currently leases the unit (which he occupies with his wife) as his primary residence.

10. In furtherance of his deception, Seth Weinstein spoke about the closing of the Elm St. Property at various times prior to closing and throughout the loan term. He did not communicate that there were any issues preventing the closing. We learned through the media in mid November that Olympic Property Partners walked away from the Elm St. property.

Wherefore I respectfully request that the court appoint a Chapter 11 trustee together with such other and further relief as this court deems just and proper.

Dated: New York, New York
       December 7, 2015

                                                              _____
                                                              Stanley Wolfson

3

# EXHIBIT B

## ARTICLE REGARDING DEBTORS FORECLOSURE

Major downtown development deal threatened with foreclosure



67°  Friday, December 11, 2015    The Dallas Morning News    ePaper  Subscribe  Sign In

Home   News   Business   Sports   Entertainment   Arts & Life   Opinion   Obits   Marketplace   DMNstore
Wall Street   Airlines   Technology   Economy & You   Top 100   Real Estate   Autos

Commercial Real Estate

# Major downtown development deal threatened with foreclosure

By STEVE BROWN
Real Estate Editor

A $240 million redevelopment plan for one of downtown Dallas' largest skyscrapers is in doubt.

The New York-based developer leading the redo of the 52-story First National Bank tower is pulling out of the deal. And the landmark Elm Street high-rise is scheduled for foreclosure sale.

At the same time, a Chicago-based real estate investor that tried to buy the building is suing the owners and accusing them of fraud.

All of these factors raise doubts about what is considered downtown's most ambitious redevelopment.

New York-based Olympic Property Partners and Dallas' BDRC Partners bought the 50-year-old office tower last year with plans to convert it into a mix of apartments, shops and office space. The only other downtown project that comes close in size and scope is the $175 million redevelopment of the historic Statler Hilton Hotel.

The firms began demolition and environmental abatement work on the building at 1401 Elm St. last year. The more than 1 million-square-foot office tower has been vacant since 2010.

Major downtown development deal threatened with foreclosure | Dallas Morning News    Page 2 of 4

The city of Dallas has earmarked $50 million in economic incentives to help the deal along.

With Olympic Property Partners withdrawing from the project, BDRC is looking for new investment capital and financing to revive the deal.

"Obviously, we are having some issues with our lender," said Bryan Dorsey, who heads BDRC Partners. "However, we expect to resolve amicably in a short period of time."

Lenders who provided $53.5 million in loans to kick off the redevelopment aren't waiting. They've posted the landmark downtown tower for forced sale at next month's foreclosure auction, according to documents filed with Dallas County.

"I'm disappointed this has occurred," said John Crawford, CEO of economic development group Downtown Dallas Inc. "They missed a payment and are trying to work it out. And they are looking at other forms of financing. Rather than try and work it out, the lender moved forward with the foreclosure."

Crawford said the 1401 Elm redevelopment is a critical project.

"It is an entire city block and a huge part of rebuilding downtown Dallas," he said. "That project represents an enormous opportunity for downtown. They have talked to a number of retailers, and the interest level is high."

Meanwhile, the company headed by Chicago businessman Scott Morgan, Elm Uptown Acquisition LLC, is accusing the owners of 1401 Elm of fraud and is asking a Dallas court to force them to comply with terms of a purchase contract it signed for the building in August.

The prospective purchaser said that the skyscraper's representatives had "secret discussions" with a lender it was dealing with, "tortuously interfering in plaintiff's purchase of the property."

Twitter: @SteveBrownDMN



## Promoted Stories From The Web